In re Jeffrey **ROSENFELD**, Debtor.

**RIVER PLACE EAST HOUSING CORPORATION**, Board of Directors, Plaintiff–Appellee,

v.

Jeffrey **ROSENFELD**, Defendant–Appellant.

No. 93–1596.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 1993.

Decided May 4, 1994.

**ARGUED:** Robert Benton Baumgartner, Fairfax, VA, for appellant. Denise Lenore Palmieri, Palmieri & Palmieri, P.C., Vienna, VA, for appellee. **ON BRIEF:** Robert L. Isaacs, Third Year Law Student, Fairfax, VA, for appellant.

Before HAMILTON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge HAMILTON and Senior District Judge JOSEPH H. YOUNG joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

The issue presented is whether a discharge in bankruptcy relieves a debtor from personal liability for post-petition assessments of cooperative housing dues. The bankruptcy court held that post-petition assessments arise from a pre-petition contract and are therefore included in the discharge. The district court reversed and concluded that a cooperative's right to payment of post-petition dues does not arise until the dues are assessed and were not discharged. We affirm the decision of the district court.

### I.

River Place East Housing Corporation is a housing cooperative association which came into existence in 1982. In January 1983, Jeffrey Rosenfeld, an attorney, acquired 1590 shares of River Place and a possessory interest in a River Place apartment under a proprietary lease assigned to him by the prior owner. TrustBank Savings financed and holds a first deed of trust on Rosenfeld's River Place apartment. Rosenfeld acquired the River Place apartment as an investment and has never resided there.

A Declaration of Covenants, Easements and Liens ("the Declaration") creates and governs the River Place cooperative. The Declaration includes a covenant running with the land which obligates the owners of the cooperative to pay cooperative association dues as they are assessed. At some point Rosenfeld ceased to pay his dues, and River Place suspended his right to use the association's common areas and has never reinstated that right. This has caused appellant no inconvenience as he has never occupied his apartment nor recently rented it.

Rosenfeld filed Chapter 7 bankruptcy in October 1990. River Place was named, scheduled and noticed as a creditor. Rosenfeld listed the debt to River Place for unpaid pre-petition dues, but did not schedule post-petition dues as a potential liability or a contingent future obligation. He did not list his covenant to pay association dues as an executory contract. He did not list his cooperative interest as an asset or a lease interest, but incorrectly stated that it was being foreclosed.

When Rosenfeld realized that TrustBank Savings had not foreclosed, he signed a consent order granting TrustBank relief from the automatic stay. Rosenfeld claimed that he intended to abandon all interest in the unit. TrustBank has not foreclosed, and Rosenfeld has asserted no ownership interest in the unit and has not leased the apartment to anyone since his bankruptcy petition, but he has not conveyed his interest to TrustBank in lieu of foreclosure or otherwise disposed of his interest. He is still the record title holder.

On February 13, 1991 the bankruptcy court granted Rosenfeld a discharge, which included $2300 in pre-petition assessments of River Place dues.

In December 1991, River Place brought suit against Rosenfeld in state court seeking cooperative association dues from November 1, 1990 through April 30, 1992 and costs, attorney's fees, and interest. The post-petition assessments exceeded $3000 as of the date of the lawsuit.

In June 1992, Rosenfeld filed a Motion for Contempt against River Place in the bankruptcy court claiming that his bankruptcy discharge extinguished any personal liability for pre-petition and post-petition cooperative assessments, and therefore River Place's suit to collect post-petition assessments violated

the permanent stay. Alternatively, Rosenfeld argued that the post-petition assessments were invalid because he had abandoned his cooperative interest and because the proprietary lease under which he held his possessory interest was unenforceable because such lease was not assumed by the bankruptcy trustee. Rosenfeld sought attorney's fees under Virginia Code Section 55–472(G).

The bankruptcy court found that River Place's right to payment for future assessments arose when Rosenfeld contracted to purchase his cooperative interest, but was contingent on Rosenfeld's continued ownership of the interest. It concluded that this debt was pre-petition because the obligation to pay existed pre-petition, even though payment was not due until post-petition, citing *In re A.H. Robins Co., Inc.*, 63 B.R. 986 (Bankr.E.D.Va.1986), *aff'd,* 839 F.2d 198 (4th Cir.1988). The bankruptcy court found that Rosenfeld's personal liability for post-petition assessments had been discharged, and none of the exceptions to discharge contained in the Bankruptcy Code applied and that River Place violated the permanent stay by attempting to collect the post-petition assessments. It ordered River Place to discontinue any further collection efforts, but denied Rosenfeld's request for sanctions because there was legal authority to support River Place's argument that the petition assessments were not discharged.

River Place appealed to the federal district court. Rosenfeld cross-appealed the bankruptcy court's failure to award attorney's fees or rule on the abandonment and lease rejection issues. The district court found that 1) Rosenfeld is still the record owner of the River Place cooperative interest; 2) the post-petition assessments were not discharged; 3) River Place's suit to collect the post-petition assessments did not violate the permanent stay; 4) Rosenfeld did not effectively abandon his River Place interest; 5) Rosenfeld's River Place interest was never treated as a leasehold interest; and 6) Rosenfeld was not entitled to attorneys' fees

because the issue of the prevailing party in the state court proceeding had not yet been resolved.

## II.

■ We review the district court's conclusions of law *de novo* and its findings of fact under the "clearly erroneous" standard. *In re Green,* 934 F.2d 568, 570 (4th Cir.1991).

■ A discharge in bankruptcy relieves the debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code. 11 U.S.C.A. § 727 (West 1993). The Code defines "debt" as "liability on a claim." 11 U.S.C.A. § 101(12) (West 1993). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C.A. § 101(5) (West 1993). Consequently, any right to payment which arises prior to the bankruptcy constitutes pre-petition debt and is discharged, absent an applicable exception. The discharge operates to permanently stay any attempt to hold the debtor personally liable for discharged debts. 11 U.S.C.A. §§ 524(a)(2) (West 1993).

The question of whether a bankruptcy discharge encompasses post-petition assessments has been addressed in the context of condominium association and homeowners' association dues with inconsistent results.* One line of cases treats the covenant to pay assessments as a contract. Under this view, an association's right to payment arises when the contract is made and is merely contingent on the debtor's continued ownership of the property. Thus, a claim for post-petition assessments arises pre-petition and is extinguished by the bankruptcy discharge. *In re Rosteck,* 899 F.2d 694, 697 (7th Cir.1990); *Matter of Wasp,* 137 B.R. 71, 73 (Bankr. M.D.Fla.1992); *In re Hodge,* Case No. 90–10275–AT, 1992 WL 613691 (Bankr.E.D.Va. July 20, 1992); *In re Miller,* 125 B.R. 441, 443 (Bankr.W.D.Pa.1991); *In re Cohen,* 122

---

\* Although these cases involve slightly different types of ownership associations, they are instructive because the analysis of whether the debtor's

liability for post-petition assessments is extinguished by the discharge is essentially the same.

B.R. 755, 758 (Bankr.S.D.Cal.1991); *In re Turner*, 101 B.R. 751, 754–55 (Bankr.D.Utah 1989); *In re Elias*, 98 B.R. 332, 337 (N.D.Ill. 1989); *In re Montoya*, 95 B.R. 511, 514 (Bankr.S.D.Ohio 1988); *In re Behrens*, 87 B.R. 971, 975 (Bankr.N.D.Ill.1988). The bankruptcy court in this case followed this analysis.

■ The district court's view was consistent with that line of cases which holds an association's claim for post-petition dues does not arise until the dues are assessed. *In re Raymond*, 129 B.R. 354, 364 (Bankr.S.D.N.Y. 1991); *In re Hill*, 100 B.R. 907, 909 (Bankr. N.D.Ohio 1989); *In re Harvey*, 88 B.R. 860, 862 (Bankr.N.D.Ill.1988); *In re Rink*, 87 B.R. 653, 654 (Bankr.D.Colo.1987); *In re Horton*, 87 B.R. 650, 652 (Bankr.D.Colo. 1987). We agree with the district court.

The Virginia Real Estate Cooperative Act provides for allocation of a cooperative's common expenses among its owners pursuant to its declaration. Va.Code Ann. § 55–444 (Michie 1986). Under River Place's declaration, assessments are made on an annual basis and each owner pays one twelfth of his annual assessment each month of the fiscal year. Assessments are used to pay for the upkeep of River Place's parking and recreational facilities and other common expenses. Each owner must pay assessments when due and is personally liable for assessments, but is not responsible for assessments or installments due after his ownership interest ceases.

The Declaration expressly states that it is a covenant running with the land and binds and inures to the benefit of all present and future owners. The Act requires that the Declaration be executed and recorded in the same manner as a deed. Va.Code Ann. § 55–438 (Michie 1986). Rosenfeld never signed the Declaration itself, but his proprietary lease expressly provides that it is subject to the Declaration.

Under the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation. *In re Raymond*, 129 B.R. at 364. The post-petition

assessments were for the upkeep of common areas and other common expenses during Rosenfeld's post-petition ownership. River Place's right to payment for post-petition assessments did not arise pre-petition and was not extinguished by Rosenfeld's bankruptcy discharge.

This court's decision in *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988), does not require a contrary result. *Grady* involved a plaintiff whose injuries from use of a Dalkon Shield did not become manifest until after the manufacturer had petitioned for bankruptcy. Grady argued that, under California law, her claim against Robins arose post-petition, when she knew or should have known of her injuries, and therefore the automatic stay did not apply to her claim. This court first found that bankruptcy law, not state law, determines which claims are covered by the automatic stay. *Id.* at 201–02. It then found that Mrs. Grady had a contingent pre-petition claim which was barred by the automatic stay. *Id.* at 203. The court stated:

> We do not believe that there must be a right to the immediate payment of money in the case of a tort or allied breach of warranty or like claim, as present here, when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim under § 362(a)(1).

*Id.* at 203. Mrs. Grady's claim alleged a tort and arose from the insertion of the Dalkon Shield, which occurred pre-petition. River Place's claim is for assessments to cover expenses incurred during Rosenfeld's post-petition ownership of real property. *Grady* deals with a claim arising from a pre-petition tort, while this case involves a breach of a covenant running with the land that occurred post-petition, and we find *Grady* is clearly distinguishable.

Rosenfeld argues that under *Gregory v. Peoples*, 80 Va. 355 (1885), the fact that the covenant to pay dues runs with the land is irrelevant to a determination of his liability for post-petition assessments. Rosenfeld argues that a covenant running with the land is

similar to a mortgage in that the personal liability is distinct from the burden on the land, and once personal liability is discharged, ·the covenant remains attached to the land only, and binds future owners of the land, but not the current owner. We disagree. We have considered the opinion in *Gregory v. Peoples,* and we find it not applicable to the present case.

Finally, Rosenfeld argues that it would be manifestly unfair and contrary to the Bankruptcy Code's policy of giving the debtor a "fresh start" to hold him personally liable for the post-petition assessments. He notes that River Place has alternative remedies for recovery of the assessments, because under Virginia law, a cooperative association has a lien on a cooperative interest for unpaid assessments and may evict the proprietary lessee and foreclose the lien. Va.Code Ann. § 55–472(A) (Michie Supp.1993). Rosenfeld's proprietary lease provides that River Place may then relet the unit and apply the proceeds to unpaid assessments. Rosenfeld also argues that it is unfair to hold him responsible for the cooperative dues when he has not exercised his possessory rights in the apartment by either residing in it or renting it out. He contends he is unable to sell his cooperative interest because the debt encumbering it exceeds its fair market value, and he is thus permanently saddled with an ever-increasing liability for cooperative dues.

■ We find these arguments unconvincing. Rosenfeld's personal liability under the covenant to pay assessments is not destroyed by River Place's access to alternative remedies, and even if Rosenfeld has not exercised the benefits of ownership, as title holder he has the legal right to do so. In order to terminate his responsibility for assessments, Rosenfeld must transfer title to the property, if necessary by a deed in lieu of foreclosure. *In re Horton,* 87 B.R. at 652; *In re Rink,* 87 B.R. at 654. His consent to an order granting the mortgage holder relief from the automatic stay did not end his ownership.

We find that River Place's right to payment for the assessments at issue did not arise until post-petition, and we affirm the district court's holdings that Rosenfeld's liability for the post-petition assessments was not discharged and that River Place did not violate the permanent stay by suing to collect the post-petition assessments.

### III.

Rosenfeld contends that he is no longer the record owner of the apartment because by granting TrustBank Savings relief from the automatic stay he abandoned his interest in the apartment in a court of law. He argues that ownership of real property may be disclaimed in a court of record, as well as by deed, citing *Southern Ry. v. Gregg,* 101 Va. 308, 43 S.E. 570, 573 (1903). Rosenfeld cites no support for the proposition that granting a secured creditor relief from the automatic stay divests the debtor of ownership of the property that secures the debt. The *Gregg* facts are so dissimilar and the legal question so different that it has no application here. In addition, the Declaration provides that an owner may not avoid personal liability for assessments by waiver, non-use or abandonment of the property.

We agree with the district court that Rosenfeld remains the owner of the River Place apartment.

### IV.

Rosenfeld argues that his cooperative interest is an unexpired lease which was deemed rejected by operation of law because the bankruptcy trustee did not assume it within 60 days of his petition. *See* 11 U.S.C.A. § 365(d)(1) (West 1993). He contends that the trustee's failure to assume the proprietary lease terminated his obligation to pay cooperative dues. The facts contradict Rosenfeld's characterization of the cooperative interest, as he did not list the cooperative interest as a lease on his bankruptcy petition and obtained a mortgage on his cooperative interest.

■ More importantly, Rosenfeld's argument is not supported by the statute. The cooperative interest is defined as "an ownership interest in the [cooperative] association coupled with a possessory interest in a unit under a proprietary lease." Va.Code Ann. § 55–426 (Michie 1986). Any transfer of an

ownership interest in an association without the possessory interest in the unit to which the ownership interest is related is void. Va. Code Ann. § 55–444(E) (Michie 1986). Thus, the possessory interest granted by the proprietary lease is inseparable from the ownership interest in the cooperative. The proprietary lease is not a lease in the traditional sense, but a method of indicating in which of the commonly-owned apartments a particular owner has a possessory interest. Rosenfeld retains title to his cooperative interest and the possessory interest in his apartment as well.

If the cooperative interest is considered a lease and deemed rejected by the trustee, the lease would not necessarily have been terminated. There is case law holding that rejection of a lease does not automatically terminate the lease, but abandons the lease to the debtor's control outside the bankruptcy estate. *In re Empire Knitting Mills, Inc.,* 123 B.R. 688, 691 (Bankr.D.Me.1991); *In re Picnic 'N Chicken, Inc.,* 58 B.R. 523, 526 (Bankr.S.D.Cal.1986); *In re Storage Technology Corp.,* 53 B.R. 471, 475 (Bankr. D.Colo.1985).

### V.

The district court's refusal to award attorney's fees and costs is reviewed for abuse of discretion. *See In re Riverside–Linden Inv. Co.,* 945 F.2d 320, 322 (9th Cir. 1991). The prevailing party in an action to recover nonpayment of cooperative assessments is entitled to attorney's fees and costs. Va.Code Ann. § 55–472(G) (Michie Supp. 1993). The district court correctly found that the matter of the prevailing party in state court had not yet been resolved. We find no abuse of discretion, and therefore affirm.

### VI.

For the reasons herein stated, the decision of the district court is affirmed.

*AFFIRMED.*