**In re J.A. JONES, INC., et al., Debtors.**

No. 03–33532.

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

April 16, 2009.

John P. Whittington, Patrick Darby, Bradley Arant Rose & White LLP, Birmingham, AL, Lou M. Agosto, W.B. Hawfield, Jr., Moore & Van Allen, NationsBank Corporate Center, John R. Miller, Jr., Paul R. Baynard, Rayburn Cooper & Durham, P.A., Nicholas James Voelker, Bradley Arant Boult Cummings LLP, Terra K. Atkinson, Katten Muchin Rosenman LLP, Charlotte, NC, Daniel C. Bruton, Bell, Davis & Pitt, P.A., Winston–Salem, NC, Danielle K. Greco, United States Bankruptcy Court, Anniston, AL, for Debtor.

Deborah L. Fletcher, Katten Muchin Rosenman LLP, Charlotte, NC, for Trustee.

Linda W. Simpson, U.S. Bankruptcy Administrator, Charlotte, NC, for U.S. Trustee.

Lane Construction Company, pro se.

iStar Financial, Inc., pro se.

Acousti Engineering Company of Florida, pro se.

Ann Stone, Assistant Attorney General, Raleigh, NC, Clifton R. Jessup, Jr., Greenberg Traurig, LLP, Bruce H. White, Patton Boggs LLP, Dallas, TX, Travis W. Moon, Hamilton Moon Stephens Steele Martin, S. Andrew Jurs, Poyner & Spruill, LLP, Richard M. Mitchell, Mitchell & Culp, PLLC, Joseph W. Moss, Jr., Bishop, Capitano & Abner, P.A., Bradley E. Pearce, Susan L. Sowell, Katten Muchin

Rosenman LLP, Robert A. Cox, Jr., McGuireWoods LLP, Kevin Michael Profit, Hamilton Fay Moon Stephens Steele Martin, David H. Conaway, David A. Matthews, Shumaker, Loop & Kendrick, LLP, Albert F. Durham, Shelley Koon Abel, Rayburn, Cooper & Durham, P.A., Charlotte, NC, Christie Lyman Dowling, W. Clark Watson, Balch & Bingham LLP, Birmingham, AL, Gary W. Farris, Burr & Forman LLP, Atlanta, GA, Michael J. Baker, Burke, Williams & Sorensen, LLP, Irvine, CA, Thomas B. Kakassy, Langdon M. Cooper, Mullen Holland & Cooper, P.A., Gastonia, NC, E. Katherine Wells, Samuel L. Finklea, Office of General Counsel, Columbia, SC, Mark N. Parry, Moses & Singer LLP, New York, NY, Bruce A. Wilson, Kutak Rock LLP, Omaha, NE, Benjamin A. Kahn, Nexsen Pruet, PLLC, Greensboro, NC, Gerald A. Jeutter, Jr., Gerald A. Jeutter, Jr., PA, Raleigh, NC, Stanley M. Salus, Wickwire Gavin, P.C., Vienna, VA, Edward L. Ripley, King & Spalding, LLP, Pamela Gale Johnson, Baker & Hostetler LLP, Houston, TX, for Interested Party.

## ORDER DENYING MOTION BY CONCORD WEST OF THE ASHLEY HOMEOWNERS' ASSOCIATION, INC. FOR RELIEF FROM STAY TO PURSUE STATE COURT LITIGATION

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter came on for hearing on January 22, 2009 and again on February 3, 2009 on the *Motion for Relief from Stay to Pursue State Court Litigation* (the "Motion") filed on December 24, 2008 by Concord West of the Ashley Homeowners' Association ("Concord West"), through counsel (D.E.4784). On January 12, 2009, Zurich Insurance Company of American ("Zurich"), appearing through counsel, filed an objection to the Motion (the "Zurich Objection") (D.E.4785). At the conclusion of the hearing on February 3, the Court requested that Concord West and Zurich brief their positions and set a briefing deadline of February 17, 2009. The parties both submitted briefs by that deadline (D.E. 4790 and 4791).

**HOLDING:** Based on the Motion and the Zurich Objection, the arguments of counsel, the parties' briefs, and the record in this case, the Court has determined that the Motion should be **DENIED.**

## *JURISDICTION*

The Motion was filed pursuant to 11 U.S.C. § 362. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157.

## *FINDINGS OF FACT*

On or about September 25, 2003 and various dates thereafter, J.A. Jones, Inc. and its affiliated entities (collectively, the "Debtors") commenced their cases pursuant to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* On or about September 26, 2003, this Court entered an Order granting the Motion for Joint Administration of the Debtors' cases.

Included among the Debtors were Metric Constructors, Inc., later known as J.A. Jones Construction Company ("Metric"), Regent Ashley Knoll, LLC, and Regent Ashley Knoll II, LLC (collectively, the "Ashley Knoll Debtors"). Metric was a construction company. The Ashley Knoll Debtors owned and operated apartment properties in Charleston, South Carolina. Metric had served as the general contractor on related construction projects in Charleston, South Carolina, whereby 18 apartment buildings and related structures were built for the Ashley Knoll Debtors in

1998 and 2000. During the course of the Debtors' bankruptcy cases, in February 2004, the assets of the Ashley Knoll Debtors were sold to a non-Debtor third party pursuant to a Court-approved sale.

Prior to the Petition Date, Zurich provided insurance coverage to the Debtors through a master insurance program (the "Master Insurance Program") comprised of general liability, business automobile coverage, and workers' compensation insurance. In connection with the Master Insurance Program, Zurich and the Debtors entered into a deductible agreement (the "Deductible Agreement") that provided for a $5 million deductible and also contained Zurich's agreement to advance deductible amounts, coupled with the Debtors' obligation to reimburse Zurich for any such advances. The Zurich insurance policies under the Master Insurance Program each expired no later than November 30, 2003.

After the Petition Date, disputes arose between Zurich and the Debtors regarding certain policy terms under the Master Insurance Program. Chief among the disputes was the Debtors' demand that Zurich continue to pay claims falling below the deductible amount. The Debtors and Zurich settled their dispute (the "Zurich Settlement").

The Zurich Settlement was documented in the Debtors' chapter 11 plan (the "Plan") and approved by this Court on August 19, 2004 in the Order confirming the Debtors' Plan (the "Confirmation Order"). The Zurich Settlement and Confirmation Order provide, among other things, that the Debtors released any claims against Zurich for the advancement of deductible amounts under the Deductible Agreement except for workers compensation coverage. In exchange, Zurich agreed to waive distribution on its own unsecured claims, totaling approximately $45 million, and to provide a $2.1 million settlement fund for distribution to certain claimholders as defined by the Plan. In addition, the Plan and Confirmation Order contain the "Zurich Bar Provisions," which provide that creditors are barred from seeking to recover the deductibles under the Zurich insurance policies from Zurich.

In connection with the Zurich Settlement and because of the large number of claims pending on the Petition Date, the Debtors, Zurich, the committee of unsecured creditors, and the bank group of secured creditors also agreed to a claims' resolution process embodied in the Zurich Claims Order. The procedure required holders of Zurich Insured Unsecured Claims (as defined in the Plan) to file supplemental proofs of claim on or before August 31, 2004. Generally speaking, the parties then exchanged documentation, followed by negotiations and possible mediation, with the goal of reaching agreement on an allowed claim amounts. Settlement pursuant to the procedures outlined in the Zurich Claims Order entitled the claimants to distributions from the Zurich settlement fund.

During the course of the bankruptcy proceeding, February 2, 2004 (the "Bar Date") was established as the last date for creditors to assert any pre-petition claims against the Debtors' estates. Notice of the Bar Date was mailed to all known creditors and also published in *The Wall Street Journal* and *The Charlotte Observer*. Subsequently, as part of the Plan confirmation process, the Debtors also published the date of the hearing on the proposed confirmation of the Plan (the "Confirmation Hearing") and the deadline to object to the Debtors' Plan in the same newspapers and mailed copies to all known creditors.

Concord West did not exist when notices of the Bar Date and Confirmation Hearing

were provided. The Debtors did not mail copies of the notice of Bar Date or Confirmation Hearing to Concord West or any of the individual condominium owners that Concord West represents.

During the Confirmation Hearing, this Court analyzed the Zurich Settlement, including the Zurich Claims Order, under the authority of the law of the Fourth Circuit. (Confirmation Order p. 18–20, D.E. 2858). This Court concluded that the Zurich Settlement: 1) fell within the this Court's jurisdiction; 2) was an "essential means for implementing the Plan"; 3) was an "integral element of the transactions incorporated into the Plan"; 4) "confer[ed] material benefit on, and is in the best interest of the Debtors, their estates and their creditors"; 5) was "important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in these Chapter 11 cases"; and 6) was consistent with the provisions of the Bankruptcy Code. *Id.* at pp. 19–20. Accordingly, this Court concluded that the Zurich Settlement was reasonable, "supported by sufficient consideration," and was in the "best interest of creditors," and was approved "under the standards enunciated by court in the Fourth Circuit." *Id.* at 20.

Subsequent to the sale of the Ashley Knoll Debtors' property, on or about 2005, the apartments that had been owned by the Ashley Knoll Debtors were converted to condominiums by a developer not associated with the Debtors. Concord West states that in early 2008, water was discovered seeping into the former apartment buildings, which Concord West alleges was the result of a latent defect. It is for this alleged latent defect that Concord West seeks to assert a claim against the Debtors more than four years after the Debtors' Plan was confirmed.

In the Motion, Concord West maintains that it should be granted relief from the automatic stay to proceed against Metric in order to pursue a state court civil suit and collect insurance proceeds available under any insurance policies issued to the Debtors relative to these alleged construction defects. Docket No. 4784. Concord West also argued at hearing that Concord West should not be stayed from pursuing its potential claims against Zurich as a result of the Zurich Claims Order and Confirmation Order. Neither Concord West nor any of the individual condominium owners that it represents filed a proof of claim in the Debtors' bankruptcy case or asserted any type of claim against the Debtors prior to filing the Motion.

### DISCUSSION

Having considered the briefs and arguments of counsel, the Court agrees with Zurich's position and, accordingly, will deny the Motion.

### A. Publication Notice to Concord West was Sufficient.

In a decision on the appeal of a matter in this case, *Zurich American Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242 (4th Cir.2007), the Fourth Circuit set forth the type of notice that unknown creditors are entitled to receive. Thus, the *Tessler* opinion serves as the law of this case as well as the law of this Circuit. The Court is bound to follow that precedent.

It appears that Concord West did not come into existence until 2005 and that the individuals represented by Concord West purchased their condominium units sometime during that year. Meanwhile, the Debtors' policies with Zurich had expired in November, 2003, and the Debtors' Plan was confirmed in August, 2004. For these reasons, notice by publication was sufficient to satisfy due process because that

form of notice reflected the only possible means of communicating with unknown, future claimants.

In *Tessler* the Fourth Circuit conducted a detailed analysis of due process and notice in bankruptcy proceedings. *Id.* at 249–51. Quoting the Supreme Court, the *Tessler* court recognized that:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Id.* at 249 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The *Tessler* court reasoned from this instruction that a debtor's estate cannot be discharged from pre-petition or pre-confirmation claims unless a debtor provides "constitutionally adequate notice to the creditor of the debtor's bankruptcy proceeding, as well as the applicable filing deadlines and hearing dates." *Id.*

■ Adequate notice to creditors in a bankruptcy case depends on whether the creditor is a "known" creditor or "unknown" creditor. *Id.* When a creditor is known to the debtor, the creditor is entitled to actual notice. *Id.* However, when a creditor is unknown, "constructive notice—typically in the form of publication—is generally sufficient to pass constitutional muster." *Id.* at 249–50.

■ An unknown creditor is a "claimant whose identity or claim is wholly conjectural or 'whose interests or whereabouts could not with due diligence be ascertained' by the debtor." *Id.* at 250. Conversely, known claimants are those actually known to the debtor or whose "identities are 'reasonably ascertainable' to the debtor." *Id.* (citations omitted). The identity of a known creditor is reasonably ascertainable if the debtor can "uncover the identity of that creditor through 'reasonably diligent efforts.'" *Id.* (citations omitted). Reasonable diligence does not require "'impractical and extended searches'" or a "'vast, open-ended investigation.'" *Id.* (citations omitted). "'The requisite search ... focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.'" *Id.* (citations omitted).

■ The real estate records that Concord West submitted at the hearing on the Motion indicated that it did not come into existence until 2005. In addition, the individual homeowners allegedly represented by Concord West did not purchase their condominiums until that year or later. Therefore, none of these parties appeared on the Debtors' books and records during the bankruptcy proceeding, nor could they have been so listed. Accordingly, under the Fourth Circuit law and the law of this case as set forth in *Tessler*, the Debtors' publication of the notice of Bar Date and Confirmation Hearing satisfied the requirements of due process as to these claimants. Concord West is, therefore, bound by the terms of the Debtors' Plan.

The cases cited by Concord West are not binding upon this Court and are also distinguishable on the facts. A number of cases involve issues of state law successor liability that are not implicated in this proceeding. For example, Zurich did not purchase substantially all of the Debtors' assets in order to continue the business operations. In *Western Auto Supply Co. v. Savage (In re Savage Indus., Inc.)*, the First Circuit took note of the fact that neither the debtor nor the purchaser made *any* attempt to provide notice to the retailers and wholesalers of certain firearms

including by publication. 43 F.3d 714, 721–22 (1st Cir.1994). That case involved a defective firearm that allegedly malfunctioned and injured a claimant prior to the asset sale and where the products liability suit was commenced prior to plan confirmation. *Id.* at 717–18. The court stated that a complete lack of notice violated due process where the retailers and wholesalers most likely appeared on the debtor's business records. *Id.* at 721; *see also Fairchild Aircraft Inc. v. Campbell (In re Fairchild Aircraft Inc.),* 184 B.R. 910, 914 (Bankr.W.D.Tex.1995) (noting that purchasers of aircraft, including one implicated in a crash occurring after the sale was approved and plan confirmed, appeared in the debtor's records, but that no particular effort was made to contact the claimants other than by publication). Furthermore, the *Savage Indus.* asset purchase agreement referenced 44 products liability claims and should have placed the debtor and purchaser on notice that certain firearms were a potential source of claims. 43 F.3d at 721. However, the *Savage Indus.* court continued "[e]ven assuming direct notice were proven impracticable ... Debtor Industries concededly made no attempt to provide notice by publication...." *Id.* at 721–22 (citations omitted).

In *New York v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the Supreme Court held that notice by publication violated the due process of a known creditor. The city of New York was a known lien claimant of the debtor and asset purchaser. 344 U.S. at 296–97, 73 S.Ct. 299. However, no actual notice was provided to the City. *Id.* Instead, the debtor relied upon a notice published twice in five newspapers in an attempt to bar the City's claim in the bankruptcy and to free the asset purchaser from the same liens. *Id.* While finding notice by publication insufficient in that case, the Court stated that "[n]otice by publication is a poor and sometimes a hopeless substitute for actual service of notice.... But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication." *Id.* at 296, 73 S.Ct. 299.

To the extent that the case law cited by Concord West references non-binding precedent on this Court, the Court declines to follow those decisions in light of the *Tessler* opinion. As for the Fourth Circuit's *Rosenfeld* decision cited by Concord West, 23 F.3d 833 (4th Cir.1994), *cert. denied,* 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994), the Court notes that the issue in *Rosenfeld* was whether the debtor's discharge relieved him of the necessity of paying dues assessments that came due post-petition for the cooperative association where he lived. 22 F.3d at 835. The Court is not persuaded that *Rosenfeld* applies in this case.

Nor does the Fourth Circuit's *Bosiger v. US Airways* opinion, 510 F.3d 442 (4th Cir.2007) compel the conclusion that notice of the Bar Date and Confirmation Hearing was inadequate as Concord West argues. *See* 510 F.3d at 445. In *Bosiger,* the Circuit Court considered whether a U.S. Airways retiree who received notice of U.S. Airways' first bankruptcy case got adequate notice of confirmation of the airline's second bankruptcy case and determined that notice was proper. 510 F.3d at 445. The *Bosiger* court commented as well on a concept that is important to this decision: the importance that finality plays in the bankruptcy process. *Id.* at 450. This Court is reluctant to permit Concord West to unravel the Debtors' case at this juncture. Because *Tessler* is determinative of the notice issue presented here, the Court concludes that Concord West received the only possible notice that the Debtors could possibly have provided.

## B. Approval of the Zurich Settlement was Permitted Under Fourth Circuit Law.

 The generally accepted rule is that that § 524(e) of the Bankruptcy Code benefits debtors only, and that insurance companies do not usually get the benefit of the debtor's discharge. *See, e.g., Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 54 (5th Cir.1993); 4 *Collier on Bankruptcy* ¶ 524.05 (15th ed.2008). The Debtors' case was unique, however, such that the general rule is inapplicable. This is the only case in which this Court has ever granted a third-party discharge, but the Court was persuaded that, absent the approval of the Zurich Settlement, it was unlikely that the Debtors would have been able to confirm a plan. In any event, the validity of Zurich's third-party discharge is irrelevant because Concord West received appropriate notice and is bound by the provisions of the Plan, including the provision granting Zurich the benefit of the discharge.

Even assuming that Concord West has appropriate standing to challenge the Zurich discharge, the Fourth Circuit has also addressed the issue of third-party discharges. In *Menard–Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir.1989), *cert denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989), the Fourth Circuit upheld an injunction approved by the bankruptcy court that prevented tort claimants from seeking recovery from non-debtor entities that had participated in an aggregated settlement. The Fourth Circuit stated "we do not think that § [524(e) ] must be literally applied in every case as a prohibition on the power of bankruptcy courts...." 880 F.2d at 702. The court concluded by saying that questions concerning in which cases § 524(e) applies were for another day. *Id.*

During the Plan confirmation process, this Court carefully considered the Zurich Settlement, including the provisions that enjoin actions against Zurich for failure to comply with the Zurich Claims Order. Even given the Court's normal reluctance to approve third-party discharges, the Court concluded that doing so in this case was essential to the Plan, because the Zurich Settlement reflected an integral part of the transactions contemplated by the Plan, conferred a material benefit upon the Debtors, their estates and creditors, and was important to the objectives of the Plan to resolve all claims involving the many parties in interest in the case. This case involved a great number of construction litigation claims, and the Debtors could not pay their insurance deductibles. The Debtors' interests would have been devastated because of multiple lawsuits. Therefore, without a global settlement that included an injunction, there would have been no coverage for any claimant. Based on the Court's analysis and review of Fourth Circuit law, the Court believes that the injunction in favor of Zurich approved in this case was valid and should not be disturbed.

In summary, the Court concludes that publication of the notice of the Bar Date and Confirmation Hearing satisfied the due process requirements such that Concord West is bound by the Debtors' Plan, including the Zurich Settlement and the Zurich Claims Order. *Tessler*, as the law of this case and in this Circuit is determinative on this point. In addition, the resolution of the multiplicity of claims by parties in interest and Zurich's contributions to the Debtors' cases sufficiently justify the third-party discharge granted to Zurich.

IT IS, THEREFORE, ORDERED that the Motion is DENIED.